NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ALWYN MARTIN,                    :      Hon. Renée Marie Bumb
                                 :
              Petitioner,        :      Civil No. 08-3972 (RMB)
                                 :
         v.                      :
                                 :
MICHELLE R. RICCI, et al.,       :           O P I N I O N
                                 :
              Respondents.       :

APPEARANCES:

        ALWYN MARTIN, #346894C
        New Jersey State Prison
        P.O. Box 861
        Trenton, New Jersey 08625
        Petitioner Pro Se

        NANCY P. SCHARFF, Assistant Prosecutor
        WARREN W. FAULK, CAMDEN COUNTY PROSECUTOR
        25 North Fifth Street
        Camden, New Jersey 08102
        Attorneys for Respondents

BUMB, District Judge

     Alwyn Martin ("Petitioner") filed a Petition for a Writ of

Habeas Corpus, pursuant to 28 U.S.C. § 2254, challenging a

judgment of conviction entered in the Superior Court of New

Jersey, Camden County, on October 18, 1999, and amended on April

29, 2003, after a jury found him guilty of first-degree murder,

felony murder, first-degree kidnapping, criminal restraint,

second-degree possession of a firearm for an unlawful purpose,

third-degree illegal possession of a handgun, attempted murder,

conspiracy to commit murder or kidnapping or both, and possession
of a handgun by certain persons not to have weapons.

Respondents filed an Answer asserting that Grounds G and L
are unexhausted and/or procedurally defaulted and that Petitioner
is not entitled to habeas relief on the merits of any ground.
Petitioner thereafter filed a motion to amend the Petition by
deleting Grounds G and L, and a motion for an evidentiary
hearing.

This Court will grant Petitioner's motion to amend the
Petition by deleting Grounds G and L, which resolves Respondents'
arguments that these claims are unexhausted and/or procedurally
defaulted.  For the reasons expressed below, this Court will
dismiss the Petition, as amended (hereinafter "the Petition"), on
the merits, deny Petitioner's motion for an evidentiary hearing
as moot, and deny a certificate of appealability.

### I.  BACKGROUND

On September 24, 1999, a jury sitting in the Superior Court
of New Jersey, Camden County, Law Division, found Petitioner
guilty of the first-degree murder of Glen Walker, felony murder
of the same victim, first-degree kidnapping of Walker, criminal
restraint, second-degree possession of a firearm for an unlawful
purpose, third-degree illegal possession of a handgun, attempted
murder of Cathy Williams, conspiracy to commit murder or
kidnapping or both, and possession of a handgun by certain

persons not to have weapons.  See State v. Martin, Docket No. A-2162-00T4 slip op. at pp. 1-2 (N.J. Super. Ct., App. Div., Mar. 7, 2003).  By Order filed October 15, 1999, Superior Court Judge Samuel D. Natal granted the state's motion to impose an extended term as a persistent offender pursuant to N.J. STAT. ANN. § 2C:44-3(a).  By judgment filed October 18, 1999, Judge Natal sentenced Petitioner to an aggregate term of life imprisonment plus 10 years, with 50 years of parole ineligibility.  Id. at 2.

The Appellate Division summarized the facts as follows:

> This criminal episode apparently arose out of a drug deal that went awry followed by an attempted armed robbery of the dealer, the victim Glen Walker.  The record permitted the jury to find that on the night of December 3, 1993, the victim, as he was approaching his home, was accosted and seized by three armed men who, after slamming him against their car, forced him into his house.  The victim's girlfriend, Cathy Williams, who was on the second floor with the couple's four sleeping children, heard a disturbance and then saw the victim being held by two armed men.  She was able to retrieve a handgun of her own and fired several shots down the stairs.  Gunfire was returned.  She had, in fact, hit one of three assailants, Trevor Walter, who died of his gunshot wounds.  Williams and the children then escaped from the house through an upstairs window and onto the porch roof.  In the meantime, the police had been summoned by neighbors across the street who had witnessed all of the events that had taken place outside the house.  The police, arriving after the two remaining assailants had made their escape, found the victim lying dead at the bottom of the stairs.  He had been shot five times, the bullets having come from two different guns, neither the one used by Williams.

3

> The two eye-witness neighbors were separately
> shown photographic arrays and both identified
> [defendants] as the assailants.  They both
> made in-court identifications as well.

State v. Martin, Docket No. A-2162-00T4 slip op. at 5 (N.J.
Super. Ct., App. Div., Mar. 7, 2003).

Petitioner appealed.  In an opinion filed March 7, 2003, the
Appellate Division of the New Jersey Superior Court affirmed the
conviction and remanded for re-sentencing on the attempted murder
conviction on the ground that the state did not request an
extended term on that charge.  Id. at pp. 7-8.  By amended
judgment filed April 29, 2003, Judge Natal amended the sentence
imposed for attempted murder to a 15-year term with a five-year
period of parole ineligibility.  As this sentence was imposed to
run concurrently with the life sentence, the re-sentencing did
not change Petitioner's aggregate sentence.  On September 8,
2003, the New Jersey Supreme Court denied certification.  See
State v. Martin, 177 N.J. 572 (2003) (table).

On January 22, 2004, Petitioner filed a pro se petition for
post-conviction relief in the Law Division.  After conducting an
evidentiary hearing, Judge Natal denied post-conviction relief by
order and opinion filed January 30, 2006.  Petitioner appealed,
and in an opinion filed January 3, 2008, the Appellate Division
affirmed the order denying post-conviction relief.  See State v.
Martin, Docket No. A-6032-05T4 slip op. (N.J. Super. Ct., App.
Div., Jan. 3, 2008).  On March 27, 2008, the New Jersey Supreme

4

Court denied certification.  See State v. Martin, 194 N.J. 445
(2008) (table).

Petitioner executed the § 2254 Petition presently before
this Court on July 24, 2008.  The Clerk received it on August 1,
2008.  The Petition, as amended by the deletion of Grounds G and
L, presents the following grounds:

> Ground One: TRIAL COUNSEL'S FAILURE TO FILE A
> MOTION TO HAVE THE ARREST WARRANT AND
> INDICTMENT DISMISSED DUE TO A TAINTED
> IDENTIFICATION AND A WARRANT WHICH WAS ISSUED
> IN VIOLATION OF THE FOURTH AMENDMENT, U.S.
> CONST., AMOUNTED TO INEFFECTIVE ASSISTANCE IN
> VIOLATION OF U.S. CONST., AMENDS. VI AND XIV.
>
> Ground Two: TRIAL COUNSEL FAILED TO PRESENT
> FACTS THAT PROVED THE IDENTIFICATIONS WERE
> UNRELIABLE AND THEREFORE INADMISSIBLE WHICH
> DEPRIVED PETITIONER OF A FAIR TRIAL.  U.S.
> CONST., AMENDS. VI AND XIV.
>
> Ground Three: THE OUT-OF-COURT PHOTOGRAPHIC
> IDENTIFICATION WAS UNNECESSARILY SUGGESTIVE
> AND CONDUCTIVE TO MISIDENTIFICATION; AS SUCH,
> THE PHOTO IDENTIFICATION WAS UNRELIABLE AND
> DENIED PETITIONER DUE PROCESS AND EQUAL
> PROTECTION OF THE LAW, AND DIRECTLY AFFECTED
> HIS RIGHT TO A FAIR TRIAL, CONTRARY TO THE
> U.S. CONST. AMENDS. VI AND XIV.
>
> Ground Four: COUNSEL'S FAILURE TO CONDUCT A
> MEANINGFUL AND EFFECTIVE INVESTIGATION OF THE
> DISCOVERY MATERIALS PRODUCED BY THE STATE, AS
> WELL AS IN FAILING TO LOCATE CERTAIN
> EXCULPATORY MATERIAL AMOUNTED TO INEFFECTIVE
> ASSISTANCE OF COUNSEL AND DIRECTLY AFFECTED
> THE FAIRNESS OF PETITIONER'S TRIAL, CONTRARY
> TO THE SIXTH AND FOURTEENTH AMENDMENTS. U.S.
> CONSTITUTION.
>
> Ground Five: TRIAL COUNSEL'S INEFFECTIVE
> PERFORMANCE IN FAILING TO INVESTIGATE A KEY
> DEFENSE ALIBI WITNESS PRIOR TO TRIAL AND

PROPERLY REVIEW HER STATEMENT DEPRIVED
PETITIONER OF HIS DUE PROCESS AND EQUAL
PROTECTION RIGHTS, AS WELL AS HIS RIGHT TO A
FAIR TRIAL, CONTRARY TO THE U.S. CONST.,
AMENDS. VI AND XIV.

Ground Six: TRIAL COUNSEL WAS INEFFECTIVE FOR
HIS FAILURE TO ADVISE KEY DEFENSE ALIBI
WITNESS OF HER SPOUSAL PRIVILEGE; WHO WAS
UNAWARE OF HER CHOICE TO TESTIFY DEPRIVED
DEFENDANT OF A FAIR TRIAL.  U.S. CONST.,
AMENDS. VI AND XIV.

Ground Seven: THE DEFENDANT WAS PREJUDICED BY
A SPECTATOR'S OUTBURST AT THE START OF THE
TRIAL AND THE TRIAL COURT'S RESPONSE WAS
INADEQUATE TO CURE THE PREJUDICE.  U.S.
CONST., AMENDS. VI AND XIV.

Ground Eight: THE TRIAL COURT FAILED TO
MAINTAIN ITS IMPARTIALITY WHEN IT
GRATUITOUSLY INSTRUCTED THE JURY THAT TWO
WITNESSES HAD IDENTIFIED THE DEFENDANTS,
CONTRARY TO U.S. CONST., AMENDS. VI AND XIV.

Ground Nine: THE SCOPE AND CONTENT OF THE
PROSECUTOR'S CLOSING ARGUMENTS DURING
SUMMATION, BASED ON MISSTATEMENT OF THE LAW,
DEPRIVED THE DEFENDANT OF A FAIR TRIAL
CONTRARY TO THE U.S. CONST., AMENDS. VI AND
XIV.

Ground Ten: TRIAL COUNSEL'S DEFICIENT
PERFORMANCE IN FAILING TO INVESTIGATE FACTS
AND LAW CRITICAL TO THE DEFENSE'S THEORY OF
THE CASE, AS WELL AS HIS WOEFUL PERFORMANCE
DURING WADE HEARING DIRECTLY AFFECTED THE
COURSE AND OUTCOME OF THE TRIAL.  SUCH
PERFORMANCE WAS CONTRARY TO PETITIONER'S
RIGHTS UNDER THE U.S. CONST., AMENDS. VI AND
XIV.

Ground Eleven: TESTIMONY THAT A WITNESS
INITIALLY REFUSED TO SIGN HIS IDENTIFICATION
OR GIVE A TAPED STATEMENT, BECAUSE OF FEAR,
WAS ERRONEOUSLY PERMITTED AND, PARTICULARLY
IN THE ABSENCE OF A LIMITING INSTRUCTION, WAS
HIGHLY PREJUDICIAL AND DEPRIVED PETITIONER OF

6

DUE PROCESS, AS WELL AS HIS RIGHT TO A FAIR
TRIAL.  U.S. CONST., AMENDS. VI AND XIV.

Ground Twelve: THE TRIAL COURT ERRONEOUSLY
RULED DEFENDANT'S REMOTE PRIOR CONVICTIONS
ADMISSIBLE, WHICH CLEARLY INFLUENCED HIS
DECISION NOT TO TESTIFY.  U.S. CONST.,
AMENDS. VI AND XIV.

Ground Thirteen: THE TRIAL COURT'S NUMEROUS
ERRORS AND INACCURATE INSTRUCTIONS IN
CHARGING THE JURY ON ACCOMPLICE LIABILITY AND
ERRORS IN ITS GENERAL INSTRUCTIONS DEPRIVED
DEFENDANT OF A FAIR TRIAL.  U.S. CONST.,
AMENDS. VI AND XIV.

Ground Fourteen: DEFENDANT WAS DENIED DUE
PROCESS WHEN TRIAL COURT SHIFTED THE BURDEN
OF PROOF BY REQUIRING DEFENDANT TO PROVE ONE
OR MORE ELEMENTS OF THE OFFENSE.  U.S.
CONST., AMEND. XIV.

(Am. Pet., Ground 12.)

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives

the court jurisdiction to entertain a habeas petition as follows:

[A] district court shall entertain an
application for a writ of habeas corpus in
behalf of a person in custody pursuant to the
judgment of a State court only on the ground
that he is in custody in violation of the
Constitution or laws or treaties of the
United States.

28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254(d), limits a federal court's

authority to grant habeas relief when a state court has

adjudicated petitioner's federal claim on the merits.  See 28

7

U.S.C. § 2254(d). Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court. See 28 U.S.C. § 2254(d). Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court decision is an 'adjudication on the merits,' reviewed under the deferential standard of § 2254(d), where it is 'a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'" Simmons v. Beard, 581 F. 3d 158, 166 (3d Cir. 2009) (quoting Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004), rev'd on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005)

(internal quotation marks and citation omitted)); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006).  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  See Rompilla, 355 F.3d at 247.

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412; see also Carey v. Musladin, 549 U.S. 70, 74 (2006) ("federal habeas relief may be granted here if the California Court of Appeal's decision was contrary to or involved an unreasonable application of this Court's applicable holdings").  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-

9

06 (2000).  See also Thomas v. Carroll, 581 F. 3d 118, 124 (3d

Cir. 2009) (State court's determination was not contrary to

federal law, as required for habeas relief, where Supreme Court

never faced the precise issue presented in the case).  Under the

"'unreasonable application' clause of § 2254(d)(1), a federal

habeas court may grant the writ if the state court identifies the

correct governing legal principle from th[e Supreme] Court's

decisions but unreasonably applies that principle to the facts of

the prisoner's case."  Williams, 529 U.S. at 413.[1]  Whether a

state court's application of federal law is "unreasonable" must

be judged objectively; an application may be incorrect, but still

not unreasonable.[2]  Id. at 409-10; see also Thomas v. Varner, 428

F. 3d 491, 497 (3d Cir. 2005).  "[T]his Court has held on numerous

occasions that it is not 'an unreasonable application of clearly

established Federal law' for a state court to decline to apply a

specific legal rule that has not been squarely established by

---

[1] See also Wright v. Van Patten, 552 U.S. 120, ____, 128 S.
Ct. 743, 747 (2008) ("Because our cases give no clear answer to
the question presented, let alone one in [petitioner's] favor, it
cannot be said that the state court unreasonabl[y] appli[ed]
clearly established Federal law") (citation and internal
quotation marks omitted).

[2] "[D]ecisions of federal courts below the level of the
United States Supreme Court may be helpful to [a court] in
ascertaining the reasonableness of state courts' application of
clearly established United States Supreme Court precedent, as
well as helpful amplifications of that precedent."  Marshall v.
Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and
internal quotation marks omitted).

this Court." See Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009).  Moreover, "a court that unreasonably extends a rule in a new context or, in the alternative, unreasonably fails to extend a rule may also be deemed to unreasonably apply the correct rule." Thomas, 581 F. 3d at 124-25 (quoting Fischetti v. Johnson, 384 F. 3d 140, 148 (3d Cir. 2004)).

However, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim." Rolan, 445 F. 3d at 678.  As the New Jersey courts adjudicated petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. § 2254(d).

### III.  DISCUSSION

### A.  Suggestive Identification

In Ground Three, Petitioner argues that "THE OUT-OF-COURT PHOTOGRAPHIC IDENTIFICATION WAS UNNECESSARILY SUGGESTIVE AND CONDUCTIVE TO MISIDENTIFICATION; AS SUCH, THE PHOTO IDENTIFICATION WAS UNRELIABLE AND DENIED PETITIONER DUE PROCESS AND EQUAL PROTECTION OF THE LAW, AND DIRECTLY AFFECTED HIS RIGHT TO A FAIR TRIAL, CONTRARY TO THE U.S. CONST. AMENDS. VI AND XIV." (Am. Pet. ¶ 12.C, Ground Three.)  As factual support, Petitioner asserts: "During the course of the photographic identification, witnesses were shown photo array which included the defendant;

11

however, the defendant's photo was emphasized by white marks in his hair, one-half inch long marks on the head of the defendant." (Id.)

The Supreme Court has observed that improper pretrial identification procedures by police may cause witnesses to misidentify a criminal. See Simmons v. United States, 390 U.S. 377, 383 (1968). An identification procedure may be deemed unduly and unnecessarily suggestive if it is based on police procedures that create "a very substantial likelihood of irreparable misidentification." Id at 384. In that case, "the witness thereafter is apt to retain in his memory the image of the [misidentification] rather than that of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." Id. at 383-84. "It is the likelihood of misidentification which violates a defendant's right to due process . . . . Suggestive confrontations are disapproved because they increase the likelihood of misidentification." Neil v. Biggers, 409 U.S. 188, 198 (1972).

Even if an identification procedure is unnecessarily suggestive, admission of the suggestive identification does not violate due process so long as the identification possesses sufficient aspects of reliability, Manson v. Brathwaite, 432 U.S. 98, 106 (1977), for reliability is the "linchpin in determining

12

the admissibility of identification testimony," id. at 114; see also United States v. Wise, 515 F. 3d 207, 215 (3d Cir. 2008). In that situation, the central question is "'whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." Brathwaite, 432 U.S. at 106 (quoting Biggers, 409 U.S. at 199); see also United States v. Maloney, 513 F. 3d 350, 355 (3d Cir. 2008). Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199. Significantly, where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, the identification does not violate due process. See Coleman v. Alabama, 399 U.S. 1, 7 (1970).

In this case, Petitioner argues that the in-court identifications of Petitioner by two witnesses - Chantee Elliot and Peter Brown - were tainted by an impermissibly suggestive photo identification. He contends that the out-of-court photo identification was suggestive because the photo of Petitioner was emphasized by white marks in the head. Petitioner presented this

13

claim on direct appeal in his pro se supplemental brief.  The
Appellate Division rejected the claim on the merits without
discussion.

The record shows that the trial court denied Petitioner's
request for a <u>Wade</u> hearing because there was no evidence of
suggestiveness.  The record further shows that on cross
examination at the trial, Ms. Elliott testified that three out of
the six photos in the photo array had white marks in the head
(Docket entry no. 19-21 at p. 43.), and Peter Brown testified
that two other photos in the six-person array contained white
markings on the heads, (Docket entry no. 19-22 at p. 44.)
Moreover, both witnesses testified that at the time of the
identification, they had not noticed white markings on any of the
photos.  (Docket entry no. 19-21 at pp. 42-43 & no. 19-22 at p.
46.)

The New Jersey courts' ruling that the in-court
identifications by Elliot and Brown were admissible was not
contrary to, or an unreasonable application of the factors which
the Supreme Court requires to be considered in evaluating the
likelihood of misidentification.  <u>See</u> <u>Biggers</u>, 409 U.S. at 199.
Under these circumstances, the adjudication of petitioner's
identification claims was not contrary to, or an unreasonable
application of <u>Biggers</u> and other applicable Supreme Court

jurisprudence.  Petitioner is not entitled to habeas relief on this claim.

B.  Due Process - Spectator's Outburst

In Ground Seven, Petitioner asserts that he "WAS PREJUDICED BY A SPECTATOR'S OUTBURST AT THE START OF THE TRIAL AND THE TRIAL COURT'S RESPONSE WAS INADEQUATE TO CURE THE PREJUDICE.  U.S. CONST., AMENDS. VI AND XIV."  (Am. Pet, Ground Seven.)

The record shows that during the opening statement by counsel for Petitioner's co-defendant, the niece of the victim shouted: "That's what you all wanted, right, the drugs and the money that you all got . . . the night before that from somebody else you all killed."  (Docket entry no. 19-19 at pp. 21-22.) The Court immediately cautioned the jury: "Members of the jury, please disregard anything that's being said by anyone who is not a witness in this trial."  Id.

Petitioner challenged the outburst by the spectator and the trial court's response on direct appeal.  The Appellate Division rejected the claim as follows:

> During the opening statement of co-
> defendant's counsel, a woman in the courtroom
> shouted out remarks to the effect that the
> perpetrators were seeking money and drugs,
> "the night before that from somebody else you
> all killed."  She was removed from the
> courtroom.  The trial judge cautioned the
> jury to disregard her remarks.  The niece
> subsequently returned to the courtroom,
> apologized outside the presence of the jury,
> and caused no further disturbance.  We find

15

no abuse of discretion in the trial judge's
handling of this incident.

State v. Martin, Docket No. A-2162-00T4 slip op. at p. 6.

The Supreme Court has "recognized that certain courtroom practices are so inherently prejudicial that they deprive the defendant of a fair trial." Carey v. Musladin, 549 U.S. 70, 72 (2006). In Musladin, the Court considered "the significance of these precedents in a case under § 2254, which bars relief on any claim 'adjudicated on the merits' in state court, unless the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined y the Supreme Court of the united States.'' Wright v. Van Patten, 552 U.S. 120, 123 (2008). In Musladin, the California courts had determined that buttons displaying the murder victim's image worn by the victim's family members sitting in the first row of the spectator's gallery did not violate due process. Musladin filed a § 2254 petition raising this claim, the district court denied relief, and the Ninth Circuit Court of Appeals reversed. The Supreme Court reversed the Ninth Circuit because the "'inheren[t] prejudic[e]' test, which [the Court] thus far ha[s] applied only in cases involving government-sponsored conduct . . ., did not clearly extend to the conduct of independently acting courtroom spectators." Van Patten, 552 U.S. at 123 (citations omitted). The Musladin Court reasoned:

16

In contrast to state-sponsored courtroom practices, the effect on a defendant's fair-trial rights of the spectator conduct to which Musladin objects is an open question in our jurisprudence. This Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial. And although the Court articulated the test for inherent prejudice that applies to state conduct in [Estelle v.] Williams[, 425 U.S. 501 (1976),] and [Holbrook v.] Flynn, [475 U.S. 560 (1986),] we have never applied that test to spectators' conduct. Indeed, part of the legal test of Williams and Flynn-asking whether the practices furthered an essential state interest-suggests that those cases apply only to state-sponsored practices.

*          *          *

Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court "unreasonabl[y] appli[ed] clearly established Federal law." § 2254(d)(1).

Musladin, 549 U.S. at 76-77 (footnote omitted).[3]

In this case, given the holding of Musladin, this Court cannot find that the New Jersey courts' determination that the spectator's outburst did not deny Petitioner a fair trial was contrary to, or an unreasonable application of clearly

---

[3] See also Van Patten, 552 U.S. at 126 ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law'") (citation and internal quotation marks omitted).

established Supreme Court precedent.  Petitioner is therefore not entitled to habeas relief on Ground Seven.

C.  Due Process - Instructions

Petitioner challenges the constitutionality of jury instructions in Grounds Eight (identification), Thirteen (accomplice liability) and Fourteen (burden of proof).  The government argues that these grounds involve state law and do not implicate the Constitution and, to the extent that they raise constitutional claims, the challenged instructions did not deprive Petitioner of due process.

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it."  Id.  See also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some [constitutional right]") (citations and internal quotation marks omitted).

18

In Estelle v. McGuire, 502 U.S. 62, 72 (1991), McGuire sought habeas relief from his state conviction for murdering his infant daughter.  He claimed that an instruction regarding the testimony of two physicians that the child had suffered child abuse (evidence of rectal tearing that was six weeks old and rib fractures that were seven weeks old) violated due process. Specifically, McGuire focused on the portion of the instruction explaining to the jury that the prior injury evidence "was received and may be considered by you only for the limited purpose of determining if it tends to show . . . a clear connection between the other two offense[s] and the one of which the Defendant is accused, so that it may be logically concluded that if the Defendant committed other offenses, he also committed the crime charged in this case."  Id. at 71.  The Supreme Court rejected the constitutional challenge to this instruction:

> McGuire argues that, despite the lack of any direct evidence linking him to those injuries, the instruction directed the jury to find that he had committed them. This claim is clearly foreclosed, however, by the language of the instruction. The challenged portion of the instruction included the words "if the Defendant committed other offenses." App. 41. By including this phrase, the trial court unquestionably left it to the jury to determine whether McGuire committed the prior acts; only if the jury believed he was the perpetrator could it use the evidence in deciding whether McGuire was guilty of the crime charged. Therefore, if the jury did not believe McGuire caused the prior injuries, he was not harmed by the challenged portion of the instruction. To the extent that the jury

19

> may have believed McGuire committed the prior
> acts and used that as a factor in its
> deliberation, we observe that there was
> sufficient evidence to sustain such a jury
> finding by a preponderance of the evidence .
> . . . The proof of battered child syndrome
> itself narrowed the group of possible
> perpetrators to McGuire and his wife, because
> they were the only two people regularly
> caring for Tori during her short life.

Estelle, 502 U.S. at 73-74.

This year, in Waddington v. Sauausad, 129 S. Ct. 823 (2009),

the Supreme Court rejected a habeas petitioner's claim that an

accomplice liability instruction was so ambiguous as to violate

due process because the jury was confused about what elements had

to be established in order for the petitioner to be found guilty

as an accomplice.  The Court outlined the law regarding the

constitutionality of state court instructions:

> Even if there is some ambiguity,
> inconsistency, or deficiency in the
> instruction, such an error does not
> necessarily constitute a due process
> violation.  Rather, the defendant must show
> both that the instruction was ambiguous and
> that there was " 'a reasonable likelihood' "
> that the jury applied the instruction in a
> way that [violated the Constitution].
> Estelle, supra, at 72, 112 S.Ct. 475 (quoting
> Boyde v. California, 494 U.S. 370, 380 . . .
> (1990)). In making this determination, the
> jury instruction "may not be judged in
> artificial isolation,' but must be considered
> in the context of the instructions as a whole
> and the trial record." Estelle, supra, at 72.
> Because it is not enough that there is some
> "slight possibility" that the jury misapplied
> the instruction, Weeks v. Angelone, 528 U.S.
> 225, 236 . . . (2000), the pertinent question
> "is 'whether the ailing instruction by itself

> so infected the entire trial that the
> resulting conviction violates due process,' "
> Estelle, supra, at 72, 112 S.Ct. 475 (quoting
> Cupp, supra, at 147, 94 S.Ct. 396).

Waddington, 129 S.Ct. at 831 -832 (2009) (citations and internal

quotation marks omitted).

(1) Identification Instruction

In Ground Eight, Petitioner asserts that "THE TRIAL COURT

FAILED TO MAINTAIN ITS IMPARTIALITY WHEN IT GRATUITOUSLY

INSTRUCTED THE JURY THAT TWO WITNESSES HAD IDENTIFIED THE

DEFENDANTS, CONTRARY TO U.S. CONST., AMENDS. VI AND XIV." (Am.

Pet. Ground Eight.)  As factual support, Petitioner asserts:

> The trial court, in its jury charge,
> specifically instructed the jury that two
> witnesses identified the defendants in
> photographic arrays.  This instruction
> amounted to an entirely gratuitous bolstering
> of the State's case by the court, and a
> denial of defendant's right to due process.
> It is beyond question that "appropriate and
> proper charges to the jury are essential for
> a fair trial."  The Court improperly
> marshaled the State's evidence in the case
> against defendant.

(Id., Supporting Facts.)

The record establishes that trial court instructed the jury

with respect to identification as follows:

> Members of the jury, there is in evidence
> certain photographs that were used to
> identify the defendants in this case.  With
> reference to the photographs submitted into
> evidence you will notice that many of the
> photographs appear to have been taken by a
> law enforcement agency or some other
> government entity.  You are not to consider

21

the fact that an agency obtained a photograph of the defendant as prejudicing him in any way.   The photographs are not evidence that a defendant has ever been arrested or convicted of any crime.   Such photographs come into the hands of law enforcement from a variety of sources including, but not limited to, driver's license applications, passports, alcoholic beverage identification cards, various forms of government employment, private employment requiring State regulation, including, but not limited to, casino license applications, security guard applications, or from a variety of other sources totally unconnected with criminal activity.

Now, members of the jury, the defendants, as part of their general denial of guilt, contend the State has not presented sufficient reliable evidence to establish beyond a reasonable doubt that they are the persons who committed the alleged offense. The burden of proving the identity of a person who committed the crime is upon the State.   For you to find a defendant guilty the State must prove beyond a reasonable doubt that the defendant is the person who committed the crime.   The defendant has neither a burden nor a duty to show that the crime that was committed was committed by someone else, or to prove the identity of that other person.   You must determine, therefore, not only whether the State has proved each and every element of the offense charged beyond a reasonable doubt, but also whether the State has proven beyond a reasonable doubt that the particular defendant, whose guilt you are considering, is the person who committed that crime.

Members of the jury, the State has presented testimony of Chantee Elliot and Peter Brown. You will recall these witnesses identified the defendants in court as the persons who committed the abduction of Glen Walker on the street and were seen leaving the residence after hearing gunshots.   The State also

presented testimony that on a prior occasion before the trial these witnesses identified the defendants as the person[s] who committed these offenses.  According to the witnesses, their identification of the defendants is based upon their observations and perceptions they made of the perpetrators at the time the offense was being committed.  It is your function to determine whether the witnesses ' identification of the defendants are reliable and believable, or whether it is based upon a mistake, or for any other reason not worthy of belief.  You must decide whether it is sufficiently reliable evidence upon which to conclude that either of the defendants is the person who committed the offense charged.

In evaluating identifications you should consider the observations and perceptions on which the identifications were based and the witness's ability to make those observations and perceptions.  If you determine that the out-of-court identification is not reliable, you may still consider the witness's in-court identification of the defendants if you find that to be reliable.  Unless the in-court identification results from the witness's observations or perceptions of the perpetrators during the commission of the offense, rather than being the product of an impression gained at any out-of-court identification procedure, it should be afforded no weight.  Thus, the ultimate issue of the trustworthiness of both the in-court and out-of-court identifications are for you to decide.  To decide whether the identification testimony is sufficiently reliable evidence upon which to conclude that a defendant is a person who committed the offense charged you should evaluate the testimony of the witnesses in light of the factors concerning credibility that I've already explained to you.  In addition, you may consider the following factors.  1) The witness's opportunity to view the person who committed the offense at the time of the offense; 2) The witness's degree of attention on the perpetrators when they observed the

crime being committed.  3) The accuracy of any description the witness gave prior to identifying the perpetrators. 4) The degree of certainty expressed by the witness in making any identification. 5) The length of time between the witness's observation of the offense and the first identification.  6) Discrepancies of inconsistencies between identifications, if any. 7) The circumstances under which any out-of-court identification was made.

Now, members of the jury, again, your recollection of the testimony is what controls.  However, and you are to disregard any representations I make of any testimony if it is not in accord with your recollection.  In this matter, Peter Brown and Chantee Elliot separately identified the defendants from different photo arrays.  They were asked if they recognized anyone in the arrays.  They picked out the photographs of the defendants as the persons they saw on the night of the incident with Glenn Walker. Again, members of the jury, it's your recollection of that testimony that should control, not any Court's representation. Members of the jury, you may also consider any other factors based on evidence, or lack of evidence in the case which you consider relevant to your determination on whether the identifications were reliable.  Members of the jury, if, after consideration of all the evidence you determine that the State has not proven beyond a reasonable doubt that a defendant was the person who committed these offenses, then you must find the defendant not guilty.  If, on the other hand, after consideration of all of the evidence you are convinced beyond a reasonable doubt that a defendant was correctly identified, you will then consider whether the State has proven each and every element of the offense charged beyond a reasonable doubt.

(Docket entry no. 19-28 at pp. 13-16.)

On direct appeal, Petitioner argued that the trial "court's gratuitous repetition and highlighting for the jury of particularly prejudicial evidence presented by the State" violated the Fourteenth Amendment's Due Process Clause.  (Docket entry no. 18-16 at p. 48.)  The Appellate Division rejected the claim summarily: "We find no error, much less plain error, in any part of the trial court's instructions to the jury.  See State v. Delibero, 149 N.J. 90, 106 (1997); accord State v. Robinson, 165 N.J. 32 (2000) (no error in jury charge on identification)." State v. Martin, Docket No. A-2162-00T4 slip op. at p. 7.

Here, Petitioner argues that the trial court's instruction that two witnesses had identified the defendants violates due process.  However, when read in its entirety, the quoted instruction establishes that the trial court unquestionably left it to the jury to decide whether the identifications by Elliot and Brown were credible and reliable.  Thus, Petitioner has not shown that there is a reasonable likelihood that the jury misapplied the instruction in a way that violated the Constitution.  Moreover, Petitioner cites no Supreme Court precedent clearly establishing the unconstitutionality of the challenged instruction.  Under these circumstances, the New Jersey courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established constitutional law, as determined by the Supreme Court.

(2) Accomplice Liability

In Ground Thirteen, Petitioner argues that "THE TRIAL COURT'S NUMEROUS ERRORS AND INACCURATE INSTRUCTIONS IN CHARGING THE JURY ON ACCOMPLICE LIABILITY AND ERRORS IN ITS GENERAL INSTRUCTIONS DEPRIVED DEFENDANT OF A FAIR TRIAL.  U.S. CONST., AMENDS. VI AND XIV."  (Am. Pet. Ground Thirteen.)  As factual support, Petitioner asserts:

> The court . . . erred in its accomplice
> liability charge by leading the jury to
> believe that the defendant had the burden of
> proof to prove beyond a reasonable doubt
> elements of the offense in which he is being
> charged.  The trial court also erred in
> instructing the jury that an accomplice whose
> guilt it considers harbored the same state of
> mind that is required to be proven against
> the person that actually committed the act.

(Id. Supporting Facts.)

In Ground Three of his pro se supplemental brief on direct appeal, Petitioner argued that the jury did not understand the accomplice liability charge because "[t]here [was] no clear language in the initial charge that conveyed to the jury that one defendant could be found guilty as a principal and another found guilty as an accomplice on the lesser included offense.  In fact it does not convey which charge in the indictment this instruction was geared to specifically."  (Docket entry no. 18-17 at p. 41.)  This Court agrees with Respondents that the adequacy of the accomplice liability charge involves a question of state law.  Moreover, the record shows that the trial judge did

26

instruct the jury as requested: "If you find that a defendant is not guilty as acting as an accomplice to X on the specific crime charge, then you should consider whether the defendant did act as an accomplice of X but with the purpose of promoting or facilitating the commission of some lesser offense than the actual crime charged in the indictment." (Docket entry no. 19-28 at pp. 20-21.) Based on the foregoing, the state courts' rejection of this claim was not contrary to, or an unreasonable application of Supreme Court precedent.

(3) Burden of Proof

In Ground Fourteen, Petitioner asserts that "DEFENDANT WAS DENIED DUE PROCESS WHEN TRIAL COURT SHIFTED THE BURDEN OF PROOF BY REQUIRING DEFENDANT TO PROVE ONE OR MORE ELEMENTS OF THE OFFENSE. U.S. CONST., AMEND. XIV." (Am. Pet. Ground Fourteen.) As factual support, Petitioner alleges that "[t]he trial court fundamentally shifted the burden of proof upon the defendant, requiring that defendant prove his innocence by proving one or more elements of the offense wherein he was charged. The burden of proof is squarely placed on the shoulders of the State to prove beyond a reasonable doubt each element of the offense charged." (Id. Supporting Facts.)

Petitioner raised this ground on direct appeal as Ground Four in his pro se supplemental brief. In Ground Four of the supplemental brief, Petitioner claimed that the instructions

27

violated due process because on page 38 of the instructions, the trial judge mistakenly stated: "If, on the other hand, you find the **defendants** failed to prove one or more of the elements beyond a reasonable doubt, then you must find the defendant not guilty of that crime as a accomplice." (Docket entry no. 18-17 at p. 53) (emphasis added). As previously stated, the Appellate Division rejected this claim on the merits without discussion.

The record shows that on page 38 of the instructions, the trial court did mistakenly use the word "defendants" in the above quoted excerpt, instead of "the State." (Docket entry no. 19-28 at p. 20.) However, it is obvious from the context that use of the word "defendants" was a slip-of-the tongue. Moreover, given that the trial judge repeatedly instructed the jurors throughout the 90 pages of instructions that the State bears the burden of proving every element beyond a reasonable doubt,[4] it is unlikely that this one slip-of-the-tongue misled the jurors into thinking that defendants are required to prove their own guilt beyond a reasonable doubt. "Because it is not enough that there is some 'slight possibility' that the jury misapplied the instruction, Weeks v. Angelone, 528 U.S. 225, 236 . . . (2000), the pertinent question is 'whether the ailing instruction by itself so infected

---

[4] For example, the judge instructed the jury: "The burden of proving each of these elements of the charge beyond a reasonable doubt rests upon the State and that burden never shifts to a defendant." (Docket entry no. 19-28, p. 8.)

28

the entire trial that the resulting conviction violates due process.'" Waddington, 129 S.Ct. at 832 (quoting Estelle, 502 U.S. at 72). Petitioner has not shown that the state courts' rejection of this claim was contrary to, or an unreasonable application of Supreme Court precedent. He is therefore not entitled to habeas relief on this ground.

D.  Due Process - Admission of Evidence

Petitioner challenges the admissibility of evidence in Grounds Eleven and Twelve. In Ground Eleven, Petitioner argues that "TESTIMONY THAT A WITNESS INITIALLY REFUSED TO SIGN HIS IDENTIFICATION OR GIVE A TAPED STATEMENT, BECAUSE OF FEAR, WAS ERRONEOUSLY PERMITTED AND, PARTICULARLY IN THE ABSENCE OF A LIMITING INSTRUCTION, WAS HIGHLY PREJUDICIAL AND DEPRIVED PETITIONER OF DUE PROCESS, AS WELL AS HIS RIGHT TO A FAIR TRIAL. U.S. CONST., AMENDS. VI AND XIV." (Am. Pet. Ground Eleven.)  As factual support, Petitioner argues that the "State's witness Peter Brown was permitted to testify, over a defense objection, that he initially refused to give a taped statement or sign the photographs which he had chosen out of an array, for reasons of fear. The defendant submits that this testimony was both irrelevant and unduly prejudicial, and that its admission, particularly in the absence of a limiting instruction [violated due process.]" (Id. Supporting Facts.)

Petitioner presented this ground on direct appeal, arguing that the testimony should have been excluded because it was highly prejudicial and of marginal probative value. (Docket entry no. 18-16 at p. 35.) The Appellate Division rejected the claim as follows:

> During the course of trial, an eyewitness who had made photographic identifications of defendants explained that he had not initially signed the photographs that he identified or given a taped statement because he feared reprisals from defendants' friends and the victim's friends. The witness did sign the photographs and give a taped statement, some months later. We find no error in the admission of this evidence which explained why the witness did not initially sign the pictures or give a statement. There had been no actual threats against the witness and the reasons for his concern were explored on direct and cross-examination. The trial court did not abuse its discretion by admitting the evidence or failing to give the jury a cautionary instruction.

State v. Martin, Docket No. A-2162-00T4 slip op. at pp. 6-7.

"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983). The admissibility of evidence is a question of state law which is not cognizable under habeas review. See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention

that the trial court erred in admitting the victim's testimony of
a prior flirtatious conversation, we find that, if there was any
error in the court's ruling . . . that error was at best one of
interpretation of the state's law of evidence and did not arise
to constitutional dimensions").

Moreover, this Court is not aware of any Supreme Court case
clearly establishing that the admission of prejudicial evidence
constitutes a violation of federal constitutional rights, and the
most relevant Supreme Court cases suggest the contrary. See,
e.g., Estelle v. McGuire, 502 U.S. 62 (1991) (allowing evidence
of prior child abuse injuries in a trial for infant murder);
Spencer v. Texas, 385 U.S. 554 (1967) (rejecting due process
challenge to admission of evidence of prior similar crimes).
Because the admission of the challenged testimony was not
contrary to, or an unreasonable application of clearly
established federal law, as determined by the Supreme Court,
Petitioner is not entitled to habeas relief under Ground Eleven.
See Minett v. Hendricks, 135 Fed. Appx. 547 (3d Cir. 2005)
(rejecting claim that admission of "other crimes" evidence is
contrary to or an unreasonable application of clearly established
Supreme Court precedent).

In Ground Twelve, Petitioner asserts that "THE TRIAL COURT
ERRONEOUSLY RULED DEFENDANT'S REMOTE PRIOR CONVICTIONS
ADMISSIBLE, WHICH CLEARLY INFLUENCED HIS DECISION NOT TO TESTIFY.

31

U.S. CONST., AMENDS. VI AND XIV." (Am. Pet. Ground Twelve.) As factual support, Petitioner asserts that the trial court's "ruling that the defendant's prior convictions, the last of which was over twelve years old at the time of trial, would be admissible in the event that he testified" was erroneous and prejudicial. (Id. Supporting Facts.)

Petitioner raised this in Ground Three of his brief on direct appeal, arguing that the ruling was contrary to the New Jersey rules of evidence and state case law interpreting those rules. (Docket entry no. 18-16 at p. 41.) The Appellate Division rejected the claim without discussion.

Like Ground Eleven, the trial court's ruling that Petitioner's prior convictions could be used to impeach his credibility if he were to testify, is a question of state law over which this Court lacks jurisdiction. Moreover, Petitioner cites no Supreme Court precedent holding that use of a prior conviction to impeach a defendant who testifies violates the United States Constitution. Petitioner has not shown that the New Jersey courts' rejection of this claim was contrary to, or an unreasonable application of Supreme Court precedent.

E.   Due Process - Prosecutorial Misconduct

In Ground Nine, Petitioner asserts that "THE SCOPE AND CONTENT OF THE PROSECUTOR'S CLOSING ARGUMENTS DURING SUMMATION, BASED ON MISSTATEMENT OF THE LAW, DEPRIVED THE DEFENDANT OF A

32

FAIR TRIAL CONTRARY TO THE U.S. CONST., AMENDS. VI AND XIV."
(Am. Pet. Ground Nine.)  As factual support, Petitioner asserts
that the prosecutor's statement during summation that Petitioner
"could be acquitted only if the jury affirmatively believed the
testimony of the alibi witnesses" deprived him of due process.
(Id. Supporting Facts.)

Petitioner raised this ground on direct appeal in Point Five
of his brief, arguing that the prosecutor misstated the burden of
proof when he argued that "[i]n order to believe that the
defendants are not Glen Walker's killers, you've got to believe
the most fantastic set of coincidences that perhaps have ever
existed."  (Docket entry no. 18-16 at p. 50.)  The Appellate
Division rejected the claim as follows: "we have reviewed the
prosecutor's summation in its entirety in light of the
established standards and find no reversible error."  State v.
Martin, Docket No. A-2162-00T4 slip op. at p. 7.

Prosecutorial misconduct may "so infect[] the trial with
unfairness as to make the resulting conviction a denial of due
process."  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).
Where "specific guarantees of the Bill of Rights are involved,
[the Supreme] Court has taken special care to assure that
prosecutorial misconduct in no way impermissibly infringes them."
Id. at 642.  The quantum or weight of the evidence is crucial to
determining whether the prosecutor's statements before the jury

33

were so prejudicial as to result in a denial of due process.
Darden v. Wainwright, 477 U.S. 168, 182 (1986); Donnelly, 416
U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

The prosecutor's comments challenged here did not infect the
trial with unfairness as to make the resulting conviction a
denial of due process under Donnelly, 416 U.S. at 643.  Thus, the
New Jersey courts' adjudication of Petitioner's prosecutorial
misconduct claim was not contrary to, or an unreasonable
application of Supreme Court precedent, and Petitioner is not
entitled to habeas relief under Ground Nine.

F.  Ineffective Assistance of Counsel

Petitioner raises ineffective assistance of counsel claims
in Grounds One, Two, Four, Five, Six, and Ten, arguing that
counsel was constitutionally deficient in failing to move to have
the indictment dismissed as the fruit of an identification that
violated the Fourth Amendment (Ground One), failing to present
facts establishing that the identification violated his
constitutional rights (Ground Two), failing to properly present a
Wade suppression motion (Ground Ten), failing to meaningfully
investigate the discovery and offer exculpatory evidence (Ground
Four), failing to adequately investigate the statement of the
alibi witness, Grace Martin (Ground Five), and failing to advise
Grace Martin of the spousal privilege (Ground Six).

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the

factfinder would have had a reasonable doubt respecting guilt."

Id. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing
> an ineffectiveness claim must consider the
> totality of the evidence before the judge or
> jury. Some of the factual findings will have
> been unaffected by the errors, and factual
> findings that were affected will have been
> affected in different ways. Some errors will
> have had a pervasive effect on the inferences
> to be drawn from the evidence, altering the
> entire evidentiary picture, and some will
> have had an isolated, trivial effect.
> Moreover, a verdict or conclusion only weakly
> supported by the record is more likely to
> have been affected by errors than one with
> overwhelming record support. Taking the
> unaffected findings as a given, and taking
> due account of the effect of the errors on
> the remaining findings, a court making the
> prejudice inquiry must ask if the defendant
> has met the burden of showing that the
> decision reached would reasonably likely have
> been different absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address

both components of an ineffective assistance claim "if the

defendant makes an insufficient showing on one."  Strickland, 466

U.S. at 697.  "If it is easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed."  Id.

In this case, Grounds One, Two and Ten relate to counsel's

alleged ineffectiveness in challenging the out-of-court photo

identifications.  He argues that counsel was constitutionally

deficient in failing to move to have the indictment dismissed as

the fruit of a photo identification that violated the Fourth
Amendment (Ground One), failing to present facts establishing
that the photo identification violated his constitutional rights
(Ground Two), and failing to properly present the Wade
suppression motion (Ground Ten).  However, because the photo
identification procedures were not unconstitutional,[5] counsel
cannot be constitutionally deficient in failing to challenge the
photo identifications.  Petitioner is therefore not entitled to
habeas relief on Grounds One, Two and Ten.

The remaining ineffective assistance of counsel claims
concern the fact that Petitioner's wife, Grace Martin, testified
on behalf of Petitioner that Petitioner was with her at the time
of the murder; but she also testified that she had contacted
Petitioner that night by calling a pager telephone number which
matched the telephone number of the pager found by police at the
scene of the murder.  Petitioner presented these ineffective
assistance of counsel claims in his petition for post-conviction
relief, i.e., failure to meaningfully investigate the discovery
(telephone number of the pager found at scene of crime) and offer
exculpatory evidence regarding same (Ground Four), failure to
adequately investigate the statement of Grace Martin which
contained the pager number (Ground Five), and failing to advise
Grace Martin of the spousal privilege (Ground Six).  After

---

[5] See Part III, A, infra.

hearing testimony of defense counsel and Petitioner, the trial

judge denied post-conviction relief in a 35-page written opinion.

(Docket entry no. 19-5.)  Petitioner raised these claims on

appeal from the order denying post-conviction relief.  The

Appellate Division rejected the claims as follows:

> Judge Natal found Cohen's [defense counsel]
> testimony at the PCR hearing to be credible
> and defendant's incredible.  He concluded
> that Cohen had spoken to Grace and reviewed
> her testimony several times over the phone
> before trial.  Based upon defendant's and
> Cohen's testimony, Judge Natal found that
> counsel had reviewed Grace's statement with
> his client before her testimony.  Thus, he
> found no deficiency in Cohen's performance
> regarding this part of defendant's claim.

>     \*            \*            \*

> . . . Judge Natal concluded that Cohen had
> spoken to Grace before trial, had reviewed
> her statement with her, had provided the
> statement to defendant, and had reviewed it
> with him.  We therefore reach the same
> conclusion as Judge Natal that defendant has
> failed to demonstrate that Cohen's
> performance in this regard was deficient.

> As to the claim that Cohen provided
> ineffective assistance because he failed to
> physically inspect the pager before trial, we
> would agree with Judge Natal that the failure
> to do so was probably deficient.  Counsel's
> obligation to conduct reasonable
> investigation in a murder case, extends to
> the inspection before trial of the physical
> evidence in the State's custody.

> However, Cohen testified that he physically
> inspected the pager at the beginning of the
> trial and matched its number to the number
> supplied by Grace in her statement.  He
> further testified that he questioned Grace

38

about her ability to recall the pager number
years after the events and to supply it to
Folks in her statement.  However, she was
unresponsive to his questions in this regard.
Therefore, whether he had inspected the pager
months earlier when he was retained to
represent defendant or not, before th trial
had progressed in any significant way, Cohen
possessed the same knowledge of the essential
facts - the phone number in Grace's statement
matched the number on the pager in evidence,
and there was no reasonable explanation why
Grace remembered it nearly five years later.
Since he never alluded to the alibi defense
in his opening to the jury, Cohen had not
painted himself into a corner requiring
Grace's production as a witness.

Seen in this light, we view the failure to
inspect the pager as immaterial to the
ultimate strategic decision faced by Cohen,
the no-win situation described by Judge
Natal.  Given his client's insistence that
Grace be called to testify [as an alibi
witness], Cohen could have either called her
as a witness to support the alibi claim, or
not have called her and rested the claim
solely upon Haffenden's [defendant's mother
in law] equivocal testimony.  Like other
aspects of trial representation, defense
attorney's decision concerning which
witnesses to call to the stand is an art, and
a court's review of such a decision should be
highly deferential.  Therefore, while Cohen's
failure to examine the physical evidence pre-
trial was professionally deficient, it
mattered little because, in the end, his
decision to call Grace as a witness was a
strategic one made with full knowledge of all
the facts.  Merely because a trial strategy
fails does not mean that counsel was
ineffective.

In this regard, it does not matter that
Cohen's PCR testimony included his assertion
that he would not have called Grace as a
witness if the decision was solely his to
make.  Second-guessing defense counsel's

tactical decisions under the distorting
effects of hindsight ought to be avoided upon
review.  Under all the circumstances
presented, we cannot conclude that Cohen's
decision to call Grace as a witness fell
below an objective standard of
reasonableness.  Defendant's claim of
ineffective assistance on these grounds must
fail.

We find the other two points raised by
defendant in support of the ineffective
assistance of counsel claim to also be
unavailing.  Defendant argues, as he did
before Judge Natal, that counsel's failure to
advise Grace of the spousal privilege,
N.J.R.E. 501, and his failure to present
exculpatory evidence, the scrap of paper
containing the pager number and Trevor's
name, demonstrate his ineffective assistance.

As to the spousal privilege, defendant has
failed to cite any authority, nor have we
found any, that supports the proposition that
Cohen had some obligation to advise Grace,
who was not his client, of the privilege at
all.  Cohen testified that he advised
defendant that it was Grace's decision
whether to testify or not.  Since it was
defendant's insistence in the first place
that Grace be called as a witness, and since
Cohen's failure to advise Grace of the
privilege certainly did not thwart that
result, we find the claim of ineffective
assistance of counsel in this regard to be
without any merit.

Nor are we persuaded by defendant's claim
that Cohen failed to introduce exculpatory
evidence - the scrap of paper listing the
pager number and the words "Trevor" and
"Beeper #" - and thus provided ineffective
assistance . . . .  Defendant claims that
effective investigation by Cohen would have
revealed who provided the information on the
scrap of paper, potentially identifying a
witness who could have testified the pager at

40

the scene was Trevor Walter's and not
defendant's, thus exculpating defendant.

First, we note that defendant failed to
establish in any way who supplied the
information contained on the scrap of paper
to Cohen.  Without that rudimentary
foundation, it is difficult to see how the
evidence would have assumed admissible form.
But, more importantly, assuming arguendo that
adequate investigation and preparation would
have resulted in some witness testifying that
the pager number on the scrap of paper was
Trevor Walter's pager number, the same number
taped to the pager found at the homicide
scene and now in evidence, we fail to see how
that would have altered the result in this
case.

Grace testified that defendant and Walters
were "like brothers."  She testified that the
pager number was given to her by defendant
and that it was that number she used in an
attempt to contact him on the night of the
murder.  In her statement to Folks, although
she attempted to explain this away during her
testimony before the jury, Grace claimed that
when she told defendant about Walters's death
the following morning, defendant questioned
how that could be and acknowledged being with
Walters "last night."  As a result . . , the
actual ownership of the pager was less
critical because even if owned by Walters,
all these other circumstances would have
permitted a very persuasive inference to be
drawn that defendant was with Walters on the
night of the homicide.  Taken in conjunction
with all of the other evidence of defendant's
guilt, we agree with Judge Natal that
defendant failed to satisfy the prejudice
prong of Strickland, and was not entitled to
relief.

State v. Martin, Docket No.  A-6032-05T4 slip op. at pp. 14-20

(citations and internal quotation marks omitted).

41

The foregoing shows that the New Jersey courts determined that, to the extent that counsel's performance was deficient, such deficient performance did not affect the outcome of the case.  The New Jersey courts' adjudication of Petitioner's ineffective assistance of counsel claims regarding the pager and testimony of Grace Martin was not contrary to, or an unreasonable application of Strickland and other Supreme Court holdings. Petitioner is therefore not entitled to habeas relief on Grounds Four, Five and Six.

G.   Certificate of Appealability

This Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

### IV.   CONCLUSION

Based on the foregoing, the Court dismisses the Petition and denies a certificate of appealability.

RENEE MARIE BUMB, U.S.D.J.

Dated: _____, 2009

42